UNITED STATES BANKRUPTCY COURT
DISTRICT OF MINNESOTA

In re:                                                                                          Bankr. No. 22-42232

Shannon Lee Smith,

      Debtor.                                                                               Chapter 7

MEMORANDUM DECISION AND ORDER

      This matter came before the bankruptcy court on Debtor's Motion Objecting to Proof of Claim No. 11 (the "Claim Objection"). [ECF No. 61.] Roy Arrieta (the "Creditor") filed a response. [ECF No. 67.] The bankruptcy court held two hearings and appearances were noted on the record. The parties confirmed a settlement is not forthcoming. The matter is now ready for disposition. As explained hereinafter, claim allowance is a core matter and the exception for personal injury torts does not apply in this case. The Claim Objection is sustained, and Proof of Claim No. 11 is disallowed pursuant to 11 U.S.C. § 502(b).

BACKGROUND

The Parties' Personal History from 2011 to 2019.

      Debtor and Creditor have a long and unhappy story. The parties agree they were in a romantic relationship from 2011 to 2019. [POC 11, Ex. A, at ¶6.] During that time, they cohabitated in a home owned by Debtor. Id. They have both described their relationship as fraught, escalating at times to police calls and no contact orders. [POC 7-3, POC 11, ECF No. 22, Exh. A and B, ECF No. 25 at p. 5.] On October 1, 2019, a State court judge entered a restraining order that effectively required the

parties to unwind their living arrangement and certain household financial matters. [POC 7-3, ECF No. 22, Exh. B, ¶¶10, 14.] The order also included a finding that Creditor had committed domestic violence against Debtor. [Id. at ¶4(b).] Creditor was ordered to have no contact with Debtor until October 1, 2021. [Id. at ¶21.] Creditor violated the protective order on January 8, 2021, he was convicted and another DANCO was entered on June 17, 2021. Fed. R. of Ev. 201; State of Minnesota v. Roy Alexander Arrieta, Case No. 10-CR-21-22. Creditor remained on probation and subject to a DANCO until June 18, 2022. Id. Their contentious dynamic has carried over into this bankruptcy case; they have had multiple contested matters in what is otherwise an uncomplicated Chapter 7 case.

### Creditor's First Proof of Claim.

Debtor filed this bankruptcy case on December 30, 2022 (the "Petition Date"). [ECF No. 1.] The Chapter 7 trustee filed a notice to creditors to file claims on March 3, 2023. [ECF No. 16]. The bar date for creditors to file proofs of claim was June 5, 2023 (the "Bar Date"). Id. On May 18, 2023, Creditor timely filed Proof of Claim 7-1 asserting a general unsecured claim for $59,767 ("POC 7"). Creditor sought to be repaid for various expenses, such as holiday gifts, a ring, credit card charges incurred during their relationship, household improvement projects, an early withdrawal from a retirement account, an insurance proceeds check, and a vehicle they purchased together. Id. On September 7, 2023, Debtor filed a motion objecting to POC 7, arguing she did not owe any money to Creditor. She also alleged she was a victim of domestic and financial abuse in her relationship with Creditor. [ECF No. 22.]

2

Creditor filed a response to the claim objection. [ECF No. 25.] And, while the claim objection was pending, Creditor filed his third amended claim, adding his own allegations about abuse in their relationship ("POC 7-3"). As amended, the claim was based on several different theories of recovery, but he stated, "Most if not all of Arrieta's Claim sound not in contract but tort." [POC 7-3.] The parties submitted supplemental briefs in connection with the first claim objection, each depicting themselves as the victim of the other's abusive conduct. [ECF Nos. 51, 54.] On December 21, 2023, the court entered an order sustaining Debtor's objection to POC 7 in part and referring the rest of the matter to mediation. [ECF No. 56.] The parties ultimately reached an agreement to resolve POC 7. On January 22, 2024, Debtor filed a fourth amendment to POC 7, decreasing the amount of his claim to $9,000. On January 23, 2024, Debtor withdrew her claim objection. It appeared the parties had settled for $9,000 and resolved all bankruptcy claims based on their relationship.

### Creditor's Second Proof of Claim.

Their truce was short-lived. Two days later, Creditor filed Proof of Claim No. 11 ("POC 11"). POC 11 was filed more than six months after the Bar Date in this case. Creditor attached a draft complaint as supporting documentation for his claim, indicating his intention to commence a new round of litigation related to their relationship from 2011 to 2019 (the "Complaint"). [POC 11, Ex. A.] The Complaint is not signed or verified by Creditor, nor has it been filed or served in any jurisdiction. Id. The Complaint begins by repeating verbatim the description of the parties' troubled relationship set forth in POC 7-3. POC 11 then introduces a new theory of

3

recovery. Creditor alleges he suffered an emotional injury characterized by panic, depression, insomnia, etc. because of his relationship with Debtor, and he asserts damages of $400,000. [POC 11, Exh. A, at ¶ 9.] Debtor filed the Claim Objection, which is now before the court. [ECF No. 61].

For further context, while POC 7 and the related claim objection were pending, Debtor amended her schedules to disclose a non-exempt asset worth $235,300.[1] [ECF No. 49.] At the time, the pool of unsecured claims in this case was less than $100,000. [POC 1-10.] It was clear that unsecured claims in this case would be paid in full, including Creditor's allowed unsecured claim for $9,000, and a substantial surplus would be returned to Debtor. But POC 11 introduced a new claim for $400,000. As a practical matter, Debtor and Creditor are now fighting to determine what happens to the surplus in this case. If POC 11 is allowed, any surplus will be distributed to Creditor. If POC 11 is disallowed, the surplus will revert to Debtor when the Chapter 7 trustee finishes administering her bankruptcy case.

## JURISDICTION

The allowance or disallowance of a claim against a bankruptcy estate is a "core proceeding," unless it requires "liquidation or estimation of contingent or unliquidated personal injury tort or wrongful death claims..." 28 U.S.C. § 157(b)(2). Bankruptcy judges may hear and enter final judgments in "all core proceedings arising under title 11, or arising in a case under title 11." 28 U.S.C. §§ 157(b)(1),

---

[1] Debtor initially failed to disclose that she co-owns a family cabin in Wisconsin. Her schedules were amended to include the fair market value of her share of the cabin.

4

1334(b); Stern v. Marshall, 564 U.S. 462, 474 (2011). By contrast, the liquidation or estimation of a personal injury or wrongful death claim is a not a core proceeding and a bankruptcy court cannot enter a final order without the parties' consent. 28 U.S.C. § 157(c)(2); Fed. R. Bankr. P. 7012(b); Wellness Int'l Network, Ltd. v. Sharif, 575 U.S. 665, 674 (2015). If litigants do not consent, the involvement of the bankruptcy judge does not terminate. Rather, the bankruptcy judge can submit proposed findings of fact and conclusions of law to a district judge for issuance of a final judgment. 28 U.S.C. § 157(c)(1); Exec. Benefits Ins. Agency v. Arkison, 573 U.S. 25, 34 (2014).[2] Alternatively, if parties do not consent and a non-core matter is transferred to district court, the district judge may ultimately abstain in favor of a non-bankruptcy forum. 28 U.S.C. § 1334(c).

Creditor argues POC 11 is based on an unliquidated personal injury tort and therefore, this court lacks jurisdiction to hear and determine the Claim Objection. [ECF No. 67, p. 2.] In his proof of claim, his injury is described as "several diagnosed mental health conditions." [POC 11, Ex. A, at ¶ 8.] He states that he experiences symptoms such as panic, anxiety, suicidal ideation, troubled sleep, stomach problems, and somatic pain. Id. Creditor alleges his mental health condition was caused by his relationship with Debtor from 2011 to 2019. Lastly, he alleges damages in the amount of $400,000. Id.

---

[2] If a bankruptcy court's determination with respect to 28 U.S.C. § 157(b)(2) is incorrect, a district court judge may treat this opinion as a report and recommendation.

Even if a mental health condition may be a legally cognizable injury in another context, such injuries do not constitute "personal injury torts" under 28 U.S.C. § 157(b)(2). The sole purpose of this term in bankruptcy is to determine whether a matter is core or non-core and thus, whether the bankruptcy court or district court should enter a final order in connection with a claim objection in a bankruptcy case. The Code does not define "personal injury tort," and the issue has not yet been decided by the Eighth Circuit.[3] This court is persuaded, however, by prior bankruptcy courts that have narrowly defined "personal injury" to require a tort with a bodily injury. In re Gawker Media LLC, 571 B.R. 612, 620 (Bankr. S.D.N.Y. 2017); In re Byrnes, 638 B.R. 821, 829 (Bankr. N.M. 2022); In re Interco, Inc., 135 B.R. 359, 362 (Bankr. E.D. Mo. 1991); In re Residential Capital, LLC, 536 B.R. 566, 571 (Bankr. S.D.N.Y 2015); In re Grimes, 388 B.R. 195, 197 (Bankr. N.D.W. Va. 2008); In re Atron Inc. of Michigan, 172 B.R. 541, 544 (Bankr. W.D. Mich. 1994).

Plain meaning and common sense require a narrow definition. In the legal profession, "personal injury" cases generally involve bodily injury to a natural person caused by an accident, defective product, dangerous premises, medical malpractice, or wrongful death. Furthermore, canons of construction require consideration of "neighboring words." United States v. Williams, 553 U.S. 285, 294 (2008); Yates v. United States, 135 S.Ct. 1074, 1085 (2015). Subsection 157(b)(2) carves out an exception for two types of claims only: "personal injury torts" and "wrongful death

---

[3] The United States Supreme Court acknowledged there is no consensus on the proper interpretation of "personal injury tort," and the Court declined to supply a definition in Stern v. Marshall, 564 U.S. at 479 n.4.

6

claims." If a non-traditional tort like defamation or negligent infliction of emotional distress was to be substituted in this subsection for "personal injury tort," the internal logic of pairing "personal injury" and "wrongful death" would break down. Indeed, if Congress intended this subset of claims to be construed more broadly, it could have written "all torts," as opposed to "personal injury torts and wrongful death claims" in 28 U.S.C. § 157(b)(2). But Congress did not do so. As written, § 157(b)(2) preserves the traditional role of bankruptcy courts in the claims allowance process and only a limited subset of claims must be transferred from the bankruptcy court to the district court for review.

Creditor further argues the bankruptcy court is "without jurisdiction to hear and decide" the Claim Objection because 28 U.S.C. § 157(b)(5) requires personal injury torts to be "tried in the district court in which the bankruptcy case is pending…" [ECF No. 67, p. 2.] Creditor's reliance on 28 U.S.C. § 157(b)(5) is misplaced. Again, this subsection is inapposite because Creditor's claim is not based on a "personal injury tort." Additionally, the Stern court expressly considered and rejected Creditor's argument that subsection 157(b)(5) exists to divest the bankruptcy court of subject matter jurisdiction. Stern v. Marshall, 564 U.S. 480 ("Section 157(b)(5) does not have the hallmarks of a jurisdictional decree, and the statutory context belies Pierce's claim that it is jurisdictional.") Just one year ago, the Court reminded lawyers and judges alike that miscellaneous statutory provisions in bankruptcy should not be construed as jurisdictional. MOAC Mall Holdings LLC v. Transform Holdco LLC, 598 U.S. 288, 297 (2023).

7

Lastly, this matter does not implicate the constitutional concerns of Stern v. Marshall. Although a creditor's right to payment is often based on State law claims, the resolution of this Claim Objection is based solely on questions of Federal law such as "deemed allowance" of a proof of claim under 11 U.S.C. §502(a) and the grounds for disallowance under 11 U.S.C. §502(b). In re Dow Corning Corp., 215 B.R. 346, 352 (Bankr.E.D.Mich.1997). In re Chateaugay Corp., 111 B.R. 67, 75 (Bankr.S.D.N.Y.1990), aff'd, 146 B.R. 339 (S.D.N.Y.1992)(There is a distinction between "liquidation" and "allowance or disallowance" of claims.)

In sum, POC 11 does not involve an "unliquidated personal injury tort." The bankruptcy court is statutorily authorized to decide the Claim Objection because it is a core matter under 28 U.S.C. § 157(b)(2). There are no constitutional issues precluding such a determination. This court may hear, determine, and enter a final order in this matter pursuant to 28 U.S.C. §§ 157(a), (b)(1) & (b)(2)(B), and 1334(b).

## DISCUSSION

### Overview of Claims Allowance in Bankruptcy

The Federal Rules of Bankruptcy Procedure address the procedural requirements of a properly filed proof of claim. For example, a proof of claim must be made in writing and signed by the creditor or its authorized agent, per Rule 3001(a) and (b). If a claim is based on a writing, the creditor must attach a copy of such writing to its proof of claim, per Rule 3001(c)(1). A "properly filed" proof of claim constitutes prima facie evidence of the validity and amount of the claim. Fed. R. Bankr. P. 3001(f). The consequence for a procedural error is not disallowance. Rather, a

8

procedurally flawed proof of claim may not be treated as prima facie evidence of validity or amount in a contested matter. In re Sears, 863 F.3d 973, 979 (8th Cir. 2017).

A proof of claim is deemed allowed unless a party in interest objects. 11 U.S.C. § 502(a). To rebut the "presumptive validity" of a properly filed proof of claim, the objecting party bears the burden of producing "substantial evidence". In re Brown, 82 F.3d 801, 805 (8th Cir. 1996) abrogated on other grounds by Raleigh v. Ill. Dep't of Revenue, 530 U.S. 15 (2000). Substantial evidence is evidence sufficient to rebut the creditor's prima face claim. In re Polaroid Corp., No. BR 08-46617, 2017 WL 1183983, at *5 (D. Minn. Mar. 29, 2017) (quoting Dove–Nation v. eCast Settlement Corp. (In re Dove–Nation), 318 B.R. 147, 152 (B.A.P. 8th Cir. 2004)). If the objecting party produces substantial evidence, then "the ultimate burden of persuasion" shifts back to the claimant "to establish its entitlement to the claims." In re Dove–Nation, 318 B.R. at 152; In re SendMyGift.com, Inc., 280 B.R. 667, 674 (Bankr.D.Minn.2002).

### Tardily Filed vs. Time-Barred Proofs of Claim

The Claim Objection asks the court to disallow POC 11 because it is "untimely." POC 11 was undoubtedly filed after the Bar Date. [ECF No. 16.] But this is not a legal basis for disallowing it. Travelers Cas. & Sur. Co. of Am. v. Pac. Gas & Elec. Co., 549 U.S. 443, 449 (2007)(The court "shall allow the claim except to the extent that the claim implicates any of the nine exceptions enumerated in § 502(b).") Pursuant to Sections 502(b)(9) and 726(a), untimeliness adversely changes the treatment of a claim in bankruptcy, i.e. late-filed claims are not entitled to receive a distribution

9

unless timely-filed claims have been paid in full. N. Dakota v. Bala (In re Racings Services, Inc.), 619 B.R. 681, 687-88 (B.A.P. 8th Cir. 2020). Tardiness is not a basis for disallowing POC 11. In re Dove-Nation, 318 B.R. 147, 152 (B.A.P. 8th Cir. 2004).[4]

Debtor also argues the claim should be disallowed because it is time-barred, and the court agrees in part. A claim is "time-barred" or "stale" if an applicable statute of limitations under non-bankruptcy law has lapsed. Pursuant to Section 502(b)(1), if a claim is unenforceable under non-bankruptcy law, the court can disallow the claim in bankruptcy. In re Freeman-Clay, 578 B.R. 423, 438 (Bankr. W.D. Mo. 2017)(a valid statute of limitations defense, if asserted, would result in disallowance of the claim.) Here, the applicable statute of limitations is six years. Minn. Stat. 541.05, subd. 1(9). Creditor complains of conduct that occurred "Beginning in the early period of their relationship, and with increasing frequency and severity toward the end of their relationship…" [POC 11, Exh. A, ¶8.] The Complaint states the relationship began in 2011 and ended in 2019. Id. In the absence of more specific allegations, the issue can be understood as follows. Tortious conduct from the first five years of their relationship is time-barred under Minn. Stat. 541.05, subd. 1(9), and thus disallowed pursuant to 11 U.S.C. §502(b)(1). The claim is not time-barred, however, to the extent Creditor's injuries incurred after December 20, 2016.

---

[4] Missing the bar date is functionally equivalent to being disallowed if there is not enough money to pay creditors in full, but it is not disallowance per se. In this case, there happens to be a substantial surplus available for distribution on account of tardily filed claims. As bankruptcy folks say, tardily-filed claims are "in the money" in this case.

10

Lastly, Debtor argues the court should apply the doctrine of laches to disallow Creditor's claim. The court declines to do so. By enacting 11 USC § 726(a), Congress made clear it intended to permit distribution to late filed claims. In re Racings Services, 619 B.R. 681, 687-88 (B.A.P. 8th Cir. 2020). It is improper to employ an equitable doctrine in a bankruptcy case to contravene an express provision of the Bankruptcy Code. Law v. Siegel, 571 U.D. 415, 421 (2014).

### Proof of Claim No. 11 Barred by Res Judicata

Debtor argues Creditor is "estopped" from asserting a new claim in her bankruptcy case. [ECF No. 61, p.6.] The court may use different terminology hereinafter but agrees with the essence of Debtor's point. When Debtor withdrew her original claim objection, Proof of Claim No. 7 was deemed allowed in accordance with 11 U.S.C. § 502(a). Allowed proofs of claim are equivalent to a final judgment and thus, a predicate for res judicata. Katchen v. Landy, 382 U.S. 323 and 334 ("a creditor who offers a proof of claim and demands its allowance is bound by what is judicially determined."); In re AFY, Inc., 571 B.R. 825, 836 (B.A.P. 8th Cir. 2017), aff'd, 902 F.3d 884 (8th Cir. 2018). Claim preclusion, or res judicata, provides that "a final judgment on the merits of an action precludes the parties or their privies from relitigating issues that were *or could have been raised* in that action." Plough By & Through Plough v. W. Des Moines Cmty. Sch. Dist., 70 F.3d 512, 516 (8th Cir. 1995)(emphasis added). This means that parties cannot relitigate the claim and all claims arising out of the same transaction, or series of transactions, even if based upon different theories or seeking different remedies. When the parties litigated the

11

validity and amount of POC 7, Creditor had a full and fair opportunity to litigate all his theories of recovery related to allegedly abusive conduct during his relationship with Debtor from 2011 to 2019. In this case, Creditor amended POC 7 a total of four times and he did change his theory of recovery.[5] He was permitted to submit supplemental briefing too. The court convened two hearings and ordered the parties to judicial mediation. Nonetheless, after POC 7 was resolved and Creditor had an allowed liquidated claim, he filed a new proof of claim based on a new legal theory sounding in tort, but still based on allegations of abusive and controlling conduct, between the same parties, during the same period. Creditor cannot relitigate the same underlying nexus of facts by seeking new or additional damages for the same injurious conduct. In re AFY, Inc., at 836; In re Blackhawk Corp., 2016 WL 3131954 (Bankr. D. Del. May 26, 2016).

Furthermore, judicial estoppel bars Creditor from litigating his liability for domestic violence against the Debtor. [POC 7-3, ECF 22, Exh. B, ¶¶10, 14.] Judicial estoppel is an equitable doctrine that "prevents a party from asserting a claim in a legal proceeding that is inconsistent with a claim taken by that party in a previous proceeding." New Hampshire v. Maine, 532 U.S. 742, 749 (2001). The Eighth Circuit has provided three factors to assist lower courts in determining when judicial estoppel applies. First, a party's later position must be "clearly inconsistent" with its prior

---

[5] A creditor can amend a proof of claim multiple times in a bankruptcy case. A creditor can also file multiple proofs of claim in a single case if they are each based on different transactions with the Debtor. But res judicata can preclude a creditor from filing additional proofs of claim based on different theories of recovery for the same transaction or series of transactions.

position. Jones v. Bob Evans Farms, Inc., 811 F.3d 1030, 1033 (8th Cir. 2016). Second, the court should consider whether acceptance of both the prior and later position would "create the perception that either the first or second court was misled." Id. Third, a court should consider whether a party would obtain "an unfair advantage or impose an unfair detriment on the opposing party if not estopped." Id.

This court concludes that Creditor should be judicially estopped in this bankruptcy proceeding from relitigating allegedly abusive conduct in his relationship with the Debtor. Creditor's current position is clearly inconsistent with prior positions in other non-bankruptcy forums. He seeks to depict himself as a victim of domestic abuse when in fact he has admitted the opposite over a period of many years. A State court entered a DANCO against Creditor in 2014. [ECF 22, Exh. A.] Another State court order entered an order on October 1, 2019 that included an admission and finding that Creditor had committed domestic violence against Debtor. [ECF 22, Exh. B at ¶4(b).] Similarly, Creditor plead guilty to misdemeanor domestic violence and yet another DANCO was issued on June 17, 2021. Fed. R. of Evid. 201; State of Minnesota v. Roy Alexander Arrieta, Case No. 10-CR-21-22. This court cannot square his prior admissions of domestic violence with his current narrative that he was the victim, rather than the perpetrator of domestic violence in his domestic relationship with the Debtor. Lastly, this court finds that Creditor would obtain an unfair advantage and Debtor would suffer an unfair detriment if he is not estopped. The Complaint attached to POC 11 foreshadows Creditor's intention to commence yet another round of litigation related to their failed relationship. And, as the Stern court

13

warned, Creditor invoked the exception for "personal injury torts" at a late stage in the case, to "sandbag" the bankruptcy proceeding and gain a tactical advantage over his opponent. Stern v. Marshall, 564 U.S. at 482 (2011)(internal quotation marks omitted). At this point, it is plainly evident Creditor is using this bankruptcy proceeding to rehash his personal history with the Debtor. Bankruptcy is a fundamentally economic enterprise; it is rarely a therapeutic one. It is time for the parties to write an ending for this long, unhappy story.

## CONCLUSION

For all the foregoing reasons, Debtor's Motion Objecting to Proof of Claim No. 11 is granted, and Proof of Claim No. 11 is disallowed.

IT IS SO ORDERED.


DATED: *September 30, 2024*          */e/Kesha L. Tanabe*
                                     _____
                                     Kesha L. Tanabe
                                     United States Bankruptcy Judge